UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EQUIGUARD, INC., | ) | Case No. 09-31943 |
| | ) | |
| Debtor. | ) | Hon. John H. Squires |

## AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

Upon final consideration of the motion (the "Motion") of Equiguard, Inc. (the "Debtor") requesting this Court's authorization to use the cash collateral of MB Financial Bank, N.A. ("MB") pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; this Court having entered an order on September 8, 2009 ("Interim Order") authorizing the Debtor's interim use of cash collateral; the Debtor and MB having agreed to the Debtor's use of MB's cash collateral on a final basis pursuant to the budget attached hereto as <u>Exhibit A</u> ("Budget") and the terms of this order (the "Order"); a final hearing ("Final Hearing") having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(b)(2); due and proper notice of the Motion and the Final Hearing having been given to all parties entitled thereto; sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.    On August 28, 2009 (the "Petition Date"), the Debtor commenced in this Court a case under chapter 11 of the Bankruptcy Code (the "Case"). The Debtor is continuing to operate its business and manage its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

{7183 ORD A0241891.DOC 2}

B.  This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  Subject to the provisions of paragraph 5 below, the Debtor acknowledges, agrees and stipulates that:

(i)  Pursuant to that certain Business Loan Agreement dated as of July 17, 2008 entered into by the Debtor and MB (as amended, supplemented, waived and otherwise modified from time to time, the "Loan Agreement" and together with all other security agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Financing Documents"), MB made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the Debtor from time to time;

(ii)  The Debtor was, as of the Petition Date, indebted to MB on account of the Indebtedness (as defined below), which is comprised of amounts due in connection with the Financing Documents and relating to the Letters of Credit (as defined below) and unpaid fees, costs and expenses in an unliquidated amount. For purposes of this Order, the term "Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Financing Documents, and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Financing Documents and this Order), which as of the Petition Date, such Indebtedness was comprised of principal amounts available to be drawn under three letters of credit issued by MB for the benefit of ACSTAR Insurance Company

(each a "Letter of Credit", and collectively, the "Letters of Credit"): (a) Letter of Credit No. X-1522 dated August 5, 2003 in the maximum amount of $350,000 issued pursuant to an Application and Agreement for Stand-By Letter of Credit executed by the Debtor; (b) Letter of Credit No. X-1843 dated November 4, 2005 in the maximum amount of $25,000 issued pursuant to an Application and Agreement for Stand-By Letter of Credit executed by the Debtor; and (c) Letter of Credit No. X-1507 dated July 1, 2003 in the maximum amount of $100,000 issued pursuant to an Application and Agreement for Stand-By Letter of Credit executed by the Debtor.

(iii) Pursuant to the Financing Documents, the Debtor granted to and/or for the benefit of MB first priority and continuing pledges, liens and security interests (the "Prepetition Liens") to secure the Indebtedness, on and in substantially all of property of the Debtor, wherever located, whether real or personal, whether tangible or intangible, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral");

(iv) As of the Petition Date and immediately prior to giving effect to this Order, (a) the Financing Documents are valid and binding agreements and obligations of the Debtor and are enforceable against the Debtor in accordance with their terms, (b) the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens, but only to the extent such permitted liens are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (c) the Indebtedness constitutes the legal, valid and binding obligations of the Debtor, and the Indebtedness, and any amounts paid at any time to MB

on account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature, or (ii) avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

    (v) The Debtor has waived, discharged and released any right it may have to challenge any of the security for the Indebtedness.

  D. The ability of the Debtor to finance its operations and the availability to the Debtor of sufficient working capital and other financial and general corporate liquidity, including letters of credit, and use of cash collateral is in the best interests of the Debtor and its creditors and estate. The use of cash collateral authorized hereunder is vital to avoid immediate irreparable harm to the Debtor's business, property and estate and to allow the orderly continuation of the Debtor's business.

  E. Based upon the record presented by the Debtor to this Court: (i) the use of cash collateral under the terms provided herein reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duty, and is supported by reasonably equivalent value and fair consideration; and (ii) the use of cash collateral has been negotiated in good faith and at arms' length between the Debtor and MB.

  IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

  1. The Motion is hereby granted on a final basis subject to the terms and conditions set forth in this Order.

  2. Subject to the terms and conditions of this Order, the Debtor is authorized to use MB's cash collateral in accordance with the Budget to pay actual, ordinary, and necessary

expenses of the Debtor's business, as well as any other expenses approved by this Court. The Budget may be modified and extended with the prior written consent of MB.

3. In consideration for the use of its cash collateral (solely upon the terms and conditions of this Order), MB shall receive the following (collectively the "Adequate Protection"):

(a) The Debtor shall deposit cash in a segregated cash collateral account at MB (the "Account") in an amount totaling at least one hundred and five percent (105%) of the aggregate maximum principal amount available on the Letters of Credit (which presently amounts to $498,750), or such lower percentage as MB may agree to in its sole discretion. MB is permitted to reimburse itself for the amount of any valid draws made under any of the Letters of Credit and any other obligations or liabilities due and owing on the Indebtedness from the Account under the terms of the Financing Documents and this Order. To the extent that any of the Letters of Credit (i) expire by their terms and MB has confirmed that no valid draws are thereafter permitted, or (ii) are paid off, as evidenced by the original Letter of Credit being returned to MB and cancelled, the amount required to be maintained in the Account shall be reduced and recalculated accordingly so that cash totaling 105%, or such lower percentage as MB may agree to in its sole discretion, of the aggregate maximum amount of the then-available Letters of Credit is in the Account;

(b) To the extent there is a diminution in MB's interests in the Prepetition Collateral after the Petition Date (whether the reason for such diminution is as a result of, arises from, or is attributable to, the imposition of the automatic stay, the use of cash collateral or depreciation, sale, loss, or otherwise), MB is hereby granted, retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid,

enforceable, non-avoidable, and fully perfected liens (the "Adequate Protection Liens") of the highest available priority, subject only to any valid and enforceable preexisting liens, upon (i) any property that the Debtor acquires after the Petition Date including, without limitation, any accounts receivable generated by the Debtor's postpetition operations, but excluding any avoidance actions under chapter 5 of the Bankruptcy Code, and (ii) any proceeds generated from such property;

(c)     An allowed administrative claim (the "Administrative Claim") against the Debtor's estates under section 507(b) of the Bankruptcy Code to the extent that the Adequate Protection Liens do not adequately protect the diminution in the value of MB's interests in the Prepetition Collateral;

(d)     Within ten (10) business days following the Debtor's receipt of a written summary invoice (with a copy delivered to Debtor's counsel, the U.S. Trustee and any counsel to an official committee of unsecured creditors (if appointed) (the "Committee")), the Debtor shall pay MB's reasonable fees and expenses for legal counsel rendered prepetition or postpetition that relate to the Indebtedness and MB's interests in the Debtor's Case; provided, that none of such fees and expenses, as adequate protection payments hereunder, shall be subject to approval by the Court or to the United States Trustee Guidelines, and MB shall not be required to file with respect thereto any interim or final fee application with the Court; provided, further, that if an objection to a professional's invoice is made within ten (10) business days following the Debtor's receipt of such invoice, the Debtor shall only be required to pay the undisputed amount and the Court shall have jurisdiction to determine any dispute concerning such invoice; and

(e) The right to petition this Court for any such additional protection it may reasonably require, including, without limitation, MB's right to request additional adequate protection of its interests in the cash collateral or relief from or modification of the automatic stay under section 362 of the Bankruptcy Code.

4. This Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Adequate Protection Liens, whether or not MB elects to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and MB may, in its sole discretion, but shall not be required to, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of its liens and security interests.

5. Notwithstanding anything herein to the contrary, including the Debtor's stipulations and releases herein solely as they relate to MB, (a) the Committee, if appointed, shall have until the later of (i) 60 days from the date of appointment of the Committee and (ii) 75 days from the entry of the Interim Order, and (b) any other non-debtor party in interest (including, without limitation, any receiver, administrator or trustee appointed or elected in the Case or any successor case or in any jurisdiction) shall have until 75 days from the entry of the Interim Order (the applicable date, (the "<u>Investigation Termination Date</u>")) to investigate the validity, perfection, and enforceability of the Prepetition Liens or to assert any other claims or causes of action against MB. If the Committee (if appointed), or any non-debtor party in interest, determines that there may be a challenge by the Investigation Termination Date, such Committee (if appointed) or other non-debtor party in interest shall have only until the Investigation

Termination Date to commence an adversary proceeding or contested matter (each, a "Challenge"), as required by the applicable Bankruptcy Rules, on behalf of the Debtor's estate setting forth the basis of any such Challenge. In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of MB under this Order or the Financing Documents pending a ruling on such Challenge. If no Challenge is filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtor and MB), then the agreements, acknowledgements, releases and stipulations contained in paragraph C of this Order shall be irrevocably binding on the estates, the Committee (if appointed) and all other parties in interest (including, without limitation, any receiver, administrator, or trustee appointed in the Case or any successor case or in any jurisdiction) without further action by any party or this Court.

6. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional cash collateral if the Debtor determines that the cash collateral use authorized by this Order is insufficient.

7. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay any amounts as provided under this Order, which may be reasonably required or necessary for the Debtor's full and timely performance under this Order.

8. MB's consent and the Debtor's authority to use MB's cash collateral under this Order shall be effective immediately and shall extend through the term of the Budget unless subsequently extended by written agreement of the Debtor and MB. To the extent any provision of this Order conflicts with any provision of the Motion, the provisions of this Order shall control.

9.  If any or all of the provisions of this Order are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court: (a) such modification, vacatur, amendment, or stay shall not affect (i) the validity of any obligation of the Debtor to MB that is or was incurred prior to MB receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "Effective Date"), or (ii) the validity, enforceability or priority of the Adequate Protection or other grants authorized or created by this Order; and (b) the Adequate Protection pursuant to this Order arising prior to the Effective Date shall be governed in all respects by the provisions of this Order in effect immediately prior to the Effective Date.

10. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code (and, to the extent not satisfied in full in cash, the Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor having hereby waived such discharge); (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting the Case to a chapter 7 case, or (d) dismissing the Case; and, notwithstanding the entry of any such order, the terms and provisions of this Order shall continue in full force and effect, and the Adequate Protection granted pursuant to this Order shall continue in full force and effect, until all of the Indebtedness is indefeasibly paid in full in cash or otherwise satisfied under the terms of the Financing Documents.

Dated: September 29, 2009            **ENTER:**

                                     _/s/ John H. Squires_____
                                     John H. Squires
                                     United States Bankruptcy Judge

{7183 ORD A0241891.DOC 2}                 9

**AGREED TO:**

| | |
|---|---|
| **EQUIGUARD, INC.** | **MB FINANCIAL BANK, N.A.** |
| By: _____ <br> One of its attorneys | By: _____ <br> One of its attorneys |
| Ira Bodenstein <br> Peter J. Roberts <br> Shaw Gussis Fishman Glantz <br>   Wolfson & Towbin LLC <br> 321 North Clark Street, Suite 800 <br> Chicago, IL 60654 | Kenneth M. Lodge <br> Courtney E. Barr <br> Locke Lord Bissell & Liddell LLP <br> 111 South Wacker Drive <br> Chicago, IL 60606 |

# EXHIBIT A

{4606 EXH A0139919.DOC}

## Projected Cash Flow
(Week Ending)

| | 10/2/2009 | 10/9/2009 | 10/16/2009 | 10/23/2009 | 10/30/2009 | 11/6/2009 | 11/13/2009 | 11/20/2009 | 11/27/2009 | 9 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | |
| Customer Collections | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 | $ 1,350 |
| Reimbursable Claims - ESS | - | 230 | - | 215 | - | 190 | - | 200 | - | 835 |
| Canadian Transfers | - | - | - | - | - | - | - | - | - | - |
| Other Cash Receipts | - | - | - | - | 40 | - | - | - | 40 | 80 |
| Total Receipts | 150 | 380 | 150 | 365 | 190 | 340 | 150 | 350 | 190 | 2,265 |
| **Disbursements** | | | | | | | | | | |
| Insurance Premiums - Assurant | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 810 |
| Payroll (with Taxes) | 170 | - | 170 | - | 170 | - | 170 | - | 170 | 850 |
| Employee Benefits | 2 | 15 | 2 | 40 | 2 | 2 | 15 | 40 | 2 | 120 |
| Commissions/Rebates | - | - | 100 | - | - | - | - | 100 | - | 200 |
| Equipment Leases | - | - | 5 | 10 | 10 | - | - | 10 | 10 | 45 |
| Legal and Professional | - | - | - | - | 125 | - | - | - | 125 | 250 |
| Marketing | - | - | 25 | - | - | - | 25 | - | - | 50 |
| Operations/Regulatory | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 135 |
| Assumed ESS Contracts - Cure | - | - | 205 | - | 180 | - | 120 | - | - | 505 |
| Reimbursable Claims -ESS | - | - | - | - | 140 | - | - | - | 160 | 300 |
| Rent | 31 | - | - | - | - | 31 | - | - | - | 62 |
| Reimbursable Employee Expenses | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 63 |
| Telephone & Utilities | - | - | - | 30 | - | - | - | 30 | - | 60 |
| Call Center Operations | - | - | 45 | - | - | - | 45 | - | - | 90 |
| Total Operating Disbursements | 315 | 127 | 664 | 192 | 739 | 145 | 487 | 292 | 579 | 3,540 |
| Operating Cash Flow | $ (165) | $ 253 | $ (514) | $ 173 | $ (549) | $ 195 | $ (337) | $ 58 | $ (389) | $ (1,275) |
| Projected Operating Cash Balances | $ 1,375 | $ 1,628 | $ 1,114 | $ 1,287 | $ 738 | $ 933 | $ 596 | $ 654 | $ 265 | $ 265 |
| Actual Operating Cash Balances | $ 1,540 | | | | | | | | | |
| (excludes MB collateral accounts) | | | | | | | | | | |
| MB Collateral Cash Balances | $ 499 | $ 499 | $ 499 | $ 499 | $ 499 | $ 499 | $ 499 | $ 499 | $ 499 | $ 499 |